**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

DENNIS KEITH SMITH, :

                      Plaintiff,

    -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                      Defendant. :

Case No. 3:09-cv-449

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

**REPORT AND RECOMMENDATIONS**

       Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

       Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984);  *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423.  To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations.  20 C.F.R. §404.1520.  First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on May 31, 2006, alleging disability from October 1, 2005, due to problems with discs in his lower back and attention deficit disorder. (Tr. 104-08; 120). The agency denied Plaintiff's application at the initial and reconsideration levels. (Tr. 66-70; 72-78). Administrative Law Judge Amelia Lombardo held a hearing, (Tr. 28-65), and subsequently determined that Plaintiff is not disabled. (Tr. 12-26). The Appeals Council denied Plaintiff's request for review, (Tr. 10-11), and Judge Lombardo's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Lombardo found that he has severe degenerative disc disease of the lumbosacral spine, tendonitis of the right shoulder, major depressive disorder, panic disorder, borderline intellectual functioning, and dependent personality

disorder, but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 18, ¶ 3; Tr. 21, ¶ 4). Judge Lombardo also found that Plaintiff has the residual functional capacity to perform a limited range of light work. *Id.* at ¶ 5. She then used section 202.18 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 25, ¶ 10). Judge Lombardo concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. *Id.* ¶ 11; Tr. 26.

The record contains a copy of treating physician Dr. Ferguson's office notes dated July 22, 2006, to November 29, 2008. (Tr. 242-46; 251-391). On July 22, 2006, Dr. Ferguson reported that he first saw Plaintiff on April 17, 2003, his diagnoses were low back pain, depression, and attention deficit disorder, that he complained of pain in his lumbar spine with paravertebral muscle spasms, and pain in his legs with muscle spasms. *Id.* Dr. Ferguson also reported that Plaintiff had limited range of motion in his lumbar spine with decreased side banding, did not use an ambulatory aid, and that a May, 2005, MRI of Plaintiff's lumbar spine revealed L4-5 spinal canal and neural foraminal narrowing secondary to prominent disk protrusion and degenerative changes of the left posterior elements at that level. *Id.* Dr. Ferguson opined that Plaintiff was unable to work. *Id.*

Dr. Ferguson reported on January 2, 2007, that Plaintiff's diagnoses were chronic low back pain, depression, and attention deficit disorder, his clinical abnormalities and gross ambulatory deformity were primarily in the lumbar spine with Plaintiff complaining of pain in the paraspinal vertebral musculature of the lumbar spine, and that he had decreased range of motion in the lumbar spine and the legs. *Id.* Dr. Ferguson reported further that Plaintiff had a sensory deficit in his lower

extremities bilaterally due to neuropathy and radiculopathy, his reflexes were 2/4 bilaterally, and he had no symptoms of muscular atrophy or spasms. *Id.* Dr. Ferguson noted that Plaintiff's response to therapy had been good and he opined that Plaintiff was unable to work. *Id.*

On September 21, 2008, Dr. Ferguson reported that Plaintiff's diagnoses were bipolar disorder, low back pain, degenerative disc disease, anxiety, RLS, and impotence, his prognosis was fair, and that he had severe pain in his low back going down his legs which was constant and which exacerbated with activities. *Id.* Dr. Ferguson also reported that Plaintiff had pain to palpation of his lumbar paravertebral muscles, decreased range of motion of his lumbar spine, nervousness, anxiety, tremors, positive leg raising test, his treatment consisted of medications, and that Plaintiff was not a malingerer. *Id.* Dr. Ferguson reported further that Plaintiff had frequent interference in his ability to concentrate and attend, was incapable of performing even low stress jobs, was able to walk for one city block without rest or severe pain, sit and stand each for twenty minutes without interruption and for less than two hours in an eight-hour workday, and could occasionally lift and carry less than ten pounds and rarely up to ten pounds. *Id.* Dr. Ferguson noted that Plaintiff was required to walk every thirty minutes for five minutes, would need breaks two to three times a day for five minutes, should elevate his legs to heart level 70% of an eight-hour workday, was unable to tolerate stressful situations, and that he was unable to do labor, lifting, or twisting. *Id.*

Plaintiff consulted with orthopedic surgeon Dr. Vitols on October 12, 2005, who noted that Plaintiff reported a May 2005 work-related injury of his low back, that a May 2005 MRI of his lumbar spine revealed a large central disc protrusion at the L4-5 level with some facet hypertrophy and recessed stenosis bilaterally, that he had a slightly antalgic gait favoring the right leg, he used no assistive devices, and that he had increased muscle tone in right and left of the

5

dorsolumbar paravertebral musculature to palpation. (Tr. 156-58). Dr. Vitols also noted that Plaintiff had generalized tenderness of his lumbosacral spine to palpation, restricted painful motion within the back that was approximately no more than 70% of normal, was able to perform heel and toe walking with some difficulty, and that he had sustained a sprain to the lumbar spine. *Id.* Dr. Vitols reported that Plaintiff had improved with physical therapy and that any attempt at returning Plaintiff to work should be with the temporary restrictions of lifting up to ten pounds and avoiding repetitive bending at the waist. *Id.*

The record reveals that Plaintiff has a history of complaining of anxiety and depression. *See, e.g.,* Tr. 191-93; 194-97; 240-46; 247-49.

Examining psychologist Dr. Flexman reported on July 17, 2006, that Plaintiff had a tenth grade education, his overall appearance was disheveled, he displayed a mild gait disturbance, his facial expressions were mildly anxious, his body movements were fidgety, his speech was appropriate, and that he was compliant during the examination. (Tr. 160-63). Dr. Flexman also reported that Plaintiff displayed overt pain behavior, had an appropriate affect, displayed no lability, his attitude was mildly anxious and passive during the evaluation, and that he was oriented. *Id.* Dr. Flexman noted that Plaintiff's concentration was poor, his effort was poor, his intellectual functioning was below average, his response style was suboptimal, and his reliability was fair and suggested moderate malingering or confusion. *Id.* Dr. Flexman noted further that Plaintiff's memory was good, his judgment was fair, obsessive thinking concerning somatic or other psychological problems was in proportion with reality, and that somatization was present. *Id.* Dr. Flexman identified Plaintiff's diagnoses as pain disorder associated with both general medical condition and psychological factors, depression NOS, and borderline intellectual functioning and

he assigned Plaintiff a GAF of 55.  *Id.*  Dr. Flexman opined that Plaintiff' abilities to understand, remember, and carry out short, simple instructions, to make judgments for simple work-related decisions, to maintain sustained attention and concentration, and to interact with supervisors were slightly impaired, and that his abilities to interact with coworkers and the public and to respond appropriately to work pressures in a normal work setting were moderately impaired.  *Id.*

The record contains a copy of Plaintiff's treatment notes from Samaritan Behavioral Health dated January 17, 2007, through November 6, 2007. (Tr. 198-237).  Those records reveal that when Plaintiff first sought mental health treatment, the evaluating counselor reported that Plaintiff's diagnoses were recurrent and moderate major depressive disorder, panic disorder with agoraphobia, and dependent personality disorder, that his wife had recently gone to live with her parents and had taken the children with her, and the counselor assigned Plaintiff a GAF of 40.  *Id.* Over time, it was noted that Plaintiff was homeless for part of the time, was depressed, his mood was labile and depressed, and that he demonstrated circumstantial thinking.  *Id.*  It was also noted that Plaintiff was very preoccupied with his relationship with his wife.  *Id.*  At the time Plaintiff terminated his mental health treatment, it was noted that his diagnoses were adjustment disorder with mixed anxiety and anxiety disorder and his GAF was 45.  *Id*.

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by failing to find that he satisfies the Listings, failing to give Dr. Ferguson's opinion controlling weight, finding that he is capable of performing light work, and by failing to include limitations regarding his ability to bend and his illiteracy. (Doc. 11).

Plaintiff argues first that he satisfies Listing 1.04A.

A claimant has the burden of proving that his or her impairment meets or equals the

7

Listings.  *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990).  In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *Elam ex rel. Golay v. Commissioner of Social Security,* 348 F.3d 124, 125 (6th Cir. 2003); *see, Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that claimant did not meet the Listing).  It is not sufficient to come close to meeting the requirements of a Listing.  *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where medical evidence almost establishes a disability under Listing 4.04(D)).

> Listing 1.04 reads in part:
>
> 1.04 *Disorders of the spine* (*e.g.,* herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> ...

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.04A.

Although Judge Lombardo determined that Plaintiff does not have an impairment or combination of impairments that meets or equals the Listings, she failed to identify any particular Listing which she may have considered.  (Tr. 21).  In addition, Judge Lombardo failed to provide any explanation as to why she concluded that Plaintiff does not satisfy any Listing.  *Id.*

A review of treating physician Dr. Ferguson's office notes and reports reveals that

on numerous occasions he documented clinical findings that are consistent with the requirements of Listing 1.04A. For example, over time, Dr. Ferguson reported that Plaintiff exhibited abnormal muscle strength, poor muscle tone, limited spinal ranges of motion, tenderness, spinal misalignment, positive straight leg raising, and sensory deficits. In addition, Dr. Vitols reported that Plaintiff had an antalgic gait, increased muscle tone, tenderness, and restricted, painful motion within his back that was approximately no more than 70% of normal.

The Commissioner argues that the record establishes that the record does not consistently reflect abnormal findings and that it does not establish that Plaintiff satisfies the durational requirement of the Act. While that may be true and while the Commissioner may have an adequate basis for discounting the findings which Dr. Ferguson and Dr. Vitols reported, it is the Commissioner's function, and not the Court's to address and resolve those issues. In the absence of an analysis of the application of the Listings, this Court simply cannot engage in meaningful appellate review. *See, Hurst v. Secretary of Health and Human Services,* 753 F.2d 517 (6th Cir. 1985). Accordingly, this Court concludes that the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health*

9

*and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

The fourth sentence of 42 U.S.C. Sec. 405(g) directs the entry of a final appealable judgment even though that judgment may be accompanied by a remand order. *Sullivan v. Finkelstein,* 496 U.S. 617 (1990). The fourth sentence does not require the district court to choose between entering final judgment and remanding; to the contrary, it specifically provides that a district court may enter judgment "with or without remanding the cause for rehearing." *Id.*

This Court concludes that not all of the factual issues have been resolved and that the record does not establish Plaintiff's entitlement to benefits. Specifically, as essentially noted above, the Commissioner erred at Step Three of the sequential evaluation process by failing to provide an analysis of which Listings he considered as well as failing to provide his reasons for concluding that Plaintiff does not satisfy the Listings. As also noted, there may be an adequate basis for the Commissioner to conclude that Plaintiff does not satisfy the Listings**.** Those are factual issues that the Commissioner must resolve.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled be reversed. It is also recommended that this matter be remanded to the Commissioner for additional administrative proceedings. This Court notes that this is a fourth sentence remand and therefore it is recommended that the matter be terminated on the Court's docket.

December 1, 2010.

                                               *s/ Michael R. Merz*
                                               United States Magistrate Judge

NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).